UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ELECTRONIC PUBLICATION ONLY

KENDELL STEPHENS,

                              Plaintiff,

- versus -

MAXX PROPERTIES, JRD MANAGEMENT,
3500 SNYDER AVENUE OWNERS
CORPORATION, LOCAL UNION 2 OF NEW
YORK STATE INDEPENDENT UNION OF
BUILDING SERVICE EMPLOYEES &
FACTORY WORKERS, USWU and IUJAT,

                              Defendants.

MEMORANDUM AND ORDER

11-CV-2575 (JG) (LB)

A P P E A R A N C E S :

SOLEIL, ONUA & ASSOCIATES, LLP
        32 Court Street
        Suite 1107
        Brooklyn, New York 11201
By:    Nnenna Onua
        *Attorneys for Plaintiff*

GORDON & REES, LLP
        90 Broad Street
        23rd Floor
        New York, New York 10004
By:    Diane Krebs
        Bran Noonan
        *Attorneys for Defendants Maxx Properties,*
        *JRD Management and 3500 Snyder Avenue*
        *Owners Corporation*

BARNES, IACCARINO & SHEPHERD, LLP
        258 Saw Mill River Road
        Elmsford, New York 10523
By:    Steven H. Kern
        *Attorneys for Defendant Local Union 2 of*
        *New York State Independent Union of Building*
        *Service Employees & Factory Workers, USWU and IUJAT*

JOHN GLEESON, United States District Judge:

Plaintiff Kendell Stephens brings a hybrid claim under § 301 of the Labor

Management Relations Act (the "LMRA"), 29 U.S.C. § 185, and the implied duty of fair

representation under the National Labor Relations Act, 29 U.S.C. §§ 151–69, against Maxx

Properties, JRD Management, 3500 Snyder Avenue Owners Corporation ("3500 Snyder Corp.")

and Local Union 2 of New York State Independent Union of Building Service Employees &

Factory Workers, United Service Workers Union and International Union of Journeyman &

Allied Trades ("Local 2"), as well as an independent claim for breach of the duty of fair

representation against Local 2.  The Defendants have answered the Second Amended Complaint

("SAC") and moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons set forth below, the Defendants' motions are granted.

## BACKGROUND

A.    *Factual Background*

Stephens was employed as a porter by Maxx Properties or JRD Management,

affiliated companies involved in the management of residential buildings.  SAC ¶¶ 2–4, 7, ECF

No. 16.[1]  His job responsibilities consisted of cleaning, repairing and generally maintaining an

apartment building at 3500 Snyder Avenue, in Brooklyn, New York, that was owned by 3500

Snyder Corp. and managed by Maxx Properties.  *See id.* ¶¶ 5, 7–8.  During his eight years of

employment, Stephens had a "stellar record."  *Id.* ¶ 9.

In October 2010, a nearby building also managed by Maxx Properties was under

renovation.  *Id.* ¶ 10.  Frank Lagana, one of the contractors working there, had discarded some

items from a storage unit in the building, including an old broken dishwasher, a used pool table

---

[1]    The facts are drawn from the SAC and are assumed to be true for purposes of these motions.

and an old pedestal sink.  *Id.* ¶¶ 11–12.  Lagana told Stephens and two other Maxx Properties

employees that these items had been placed on the curb to be picked up by sanitation workers as

garbage.  *Id.* ¶ 13.  Believing the items to be garbage, one employee took the sink and Stephens

took the dishwasher for its parts.  *Id.* ¶ 14.

Several days later, Reginald Boyd, the property manager, reported that the

dishwasher had been stolen.  *Id.* ¶ 18.  Stephens and Boyd had a bad relationship.  *Id.* ¶¶ 18–20.

When Stephens learned of the report, he returned the dishwasher to avoid additional conflict with

Boyd.  *Id.* ¶ 21.  Nevertheless, Stephens's employment was terminated for theft of the

dishwasher.  *Id.* ¶ 22.  The employee who took the sink was not terminated.  *Id.* ¶ 24.

Stephens filed a grievance with his union, Local 2.  *See id.* ¶ 25.  Pursuant to a

Collective Bargaining Agreement ("CBA") between Maxx Properties and Local 2, the matter

went to arbitration.  *See id.* ¶¶ 25–26.  The arbitration was assigned to Robert Herzog, one of

only two arbitrators approved in the CBA.  *Id.* ¶ 26.[2]  During the arbitration, Maxx Properties

was represented by Stefanie Munsky.  *Id.* ¶ 27.  Stephens had an attorney provided by Local 2.

Munsky and Herzog had a "friendly relationship" and spoke about "personal

matters" at the arbitration.  *Id.* ¶ 27.  Munsky also heated Herzog's lunch and offered him tea,

perks that were not offered to the other attendees.  *Id.* ¶¶ 27–28.  After two days of hearings, the

arbitrator issued a decision concluding that Stephens's employment had been terminated for just

cause due to his theft of the dishwasher.  *See id.* ¶ 30.

B.      *Procedural Background*

Stephens commenced this action on May 27, 2011.  He filed the SAC on

November 29, 2011, and the Defendants timely answered.  In the SAC, Stephens alleges that

---

[2]          Herzog's name is misspelled as Herzon in the SAC.

Local 2 breached its duty of fair representation by failing to take action in response to the

purported bias of the arbitrator.  He also alleges that he was fired without just cause.  He asserts a

hybrid § 301/ duty of fair representation claim against all the Defendants and separate duty of

fair representation claim against Local 2.

On March 7, 2012, the Defendants moved for judgment on the pleadings.  In

opposing these motions, Stephens has filed an affidavit containing additional facts bearing on the

purported bias of the arbitrator.  He asserts that when Herzog arrived for the first day of the

arbitration, Munsky and Herzog hugged each other and met privately in Munsky's office for

approximately 15 minutes.  Stephens Aff. ¶¶ 22–25, ECF No. 31-1.  After Boyd had testified at

the arbitration hearing, Munsky met privately with Herzog, Boyd and Lagana (who was about to

testify).  *Id.* ¶ 27.  Herzog also consented to Munsky's request to delay the hearing for two hours

so she could call another witness.  *See id.* ¶ 29.  On the second day of the arbitration, Herzog and

Munsky again greeted each other with a hug and had another private meeting.  *Id.* ¶ 30.  During

the hearing, Munsky purchased a snack and tea for Herzog.  *Id.*  Stephens asserts that Local 2's

attorney noted these improprieties and told Stephens that Maxx Properties could only win due to

the friendship between Munsky and Herzog.  *See id.* ¶¶ 31–32.

DISCUSSION

A.      *Standard of Review*

A motion for judgment on the pleadings pursuant to Rule 12(c) is assessed under

the same standard applicable to a pre-answer motion to dismiss for failure to state a claim.  *Bank*

*of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  Thus, "[t]o survive a Rule

12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Id.* (internal quotation marks and citation omitted);
*see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

B.      *Analysis*

To prevail on a hybrid § 301 claim, a plaintiff "must demonstrate both (1) that
[the employer] breached its collective bargaining agreement and (2) that [the union] breached its
duty of fair representation." *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415
F.3d 279, 282 (2d Cir. 2005); *see also White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir.
2001). "The plaintiff may sue the union or the employer, or both, but must allege violations on
the part of both." *White*, 237 F.3d at 179. Thus, a breach of the union's duty of fair
representation is essential to both of Stephens's claims.[3]

"[A] union breaches the duty of fair representation when its conduct toward a
member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Sanozky*, 415 F.3d at
282 (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)) (internal quotation
marks omitted) (alteration in original). Stephens does not allege the Local 2's conduct toward
him was discriminatory. Thus, he must sufficiently allege its conduct was either arbitrary or in
bad faith.

"[A] union's actions are arbitrary only if, in light of the factual and legal
landscape at the time of the union's actions, the union's behavior is so far outside a wide range
of reasonableness as to be irrational." *Id.* at 282–83 (quoting *Airline Pilots Ass'n Int'l v. O'Neill*,
499 U.S. 65, 67 (1991)) (internal quotations marks omitted) (alteration in original). "This wide
range of reasonableness gives the union room to make discretionary decisions and choices, even
if those judgments are ultimately wrong." *White*, 237 F.3d at 179 (quoting *Marquez*, 525 U.S. at

---

[3]          "The standard for the second prong of a hybrid cause of action under section 301 and a stand-
alone claim for breach of the duty of fair representation is the same." *Dennis v. Local 804*, No. 07-CV-9754 (HB),
2009 WL 1473484, at *4 n.4 (S.D.N.Y. May 27, 2009).

45–46) (internal quotation marks omitted).  "A showing of '[b]ad faith requires a showing of

fraudulent, deceitful, or dishonest action.'"  *Id.* (quoting *Sim v. N.Y. Mailers' Union No. 6*, 166

F.3d 465, 472 (2d Cir. 1999)).  It is clear from these standards that review of a union's conduct is

"highly deferential."  *O'Neill*, 499 U.S. at 78; *see also Vaughn v. Air Line Pilots Ass'n, Int'l*, 604

F.3d 703, 709 (2d Cir. 2010); *Dennis*, 2009 WL 1473484, at *4.

    Stephens has failed to sufficiently allege that Local 2's conduct toward him by

failing to object to the arbitrator was arbitrary or in bad faith.[4]  Allegations that the employer's

attorney discussed personal matters with the arbitrator, heated his lunch, and offered him tea are

insufficient to show that Local 2's failure to seek recusal of the arbitrator for bias was so

unreasonable as to violate the union's duty of fair representation.

    In this context, the relevant question is not whether the conduct of the arbitrator or

the employer's counsel was improper or whether a recusal motion should have been granted.

Rather, the crucial question is whether the facts alleged sufficiently show that the attorney's

failure to seek recusal under the circumstances was so far outside the range of reasonableness as

to be arbitrary or in bad faith.  The facts alleged do not make such a showing.[5]

    The attorney had to weigh the risks of raising the bias issue against the risks of

not raising it.  A recusal motion would have risked offending the arbitrator.  And, if the motion

had been made unsuccessfully, it would have been unlikely that Stephens could have done

anything about it.  Getting an arbitral decision vacated on the grounds of bias requires a showing

of "evident partiality," the standard for which is whether "a reasonable person *would have to*

---

[4]   For purposes of this opinion, I assume that the conduct of the attorney hired for Stephens by Local 2 can be attributed to Local 2.

[5]   To the extent Stephens argues that Local 2 breached its duty of fair representation when it entered into the CBA because the CBA only allows for two different people to serve as arbitrators, I conclude there are no allegations in the SAC that would support an inference that this decision was arbitrary or in bad faith.

*conclude* that an arbitrator was partial to one party to the arbitration." *Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984) (emphasis added).

The circumstances alleged in the SAC would likely not rise to the level of evident partiality. Courts are generally tolerant of a degree of friendliness or personal relationships between arbitrators and parties or their counsel. "Were a person to be disqualified simply because he has professional or social relationships with one of the parties, this would make it virtually impossible in some instances to obtain qualified and experienced arbitrators." *Hunt v. Mobil Oil Corp.*, 654 F. Supp. 1487, 1498 (S.D.N.Y. 1987); *see also, e.g.*, *Ohlfs v. Charles Schwab & Co.*, No. 08-cv-00710-LTB, 2012 WL 202776, at *5 (D. Colo. Jan. 24, 2012) (noting that "some friendly exchanges will naturally occur between the arbitrators and counsel for the parties" during the course of a hearing and that this does not establish partiality). Thus, the fact that the arbitrator and the employer's counsel were friendly with one another and discussed personal matters would likely be insufficient to show evident partiality. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 649 (6th Cir. 2005) ("Certainly, arbitrators and attorneys frequently participate in activities that result in communication unrelated to the subject matter of litigation before the arbitrator, and it would be unreasonable to suggest such contacts in unrelated matters are prohibited." (citing *Morelite Constr.*, 748 F.2d at 83)).

Additionally, the fact that the employer's counsel gave the arbitrator some tea and reheated his lunch for him during the course of the hearing would not necessarily require the arbitrator's disqualification. I have been unable to locate any case in which an arbitrator's decision was vacated due to the arbitrator's receipt of these or similar favors. More to the point,

7

an attorney's failure to seek recusal in the circumstances presented here cannot be deemed irrational, even if the arbitrator's recusal should have occurred.

I also conclude that the facts asserted in Stephens's affidavit do not warrant granting leave to amend.  The facts asserted in Stephens's affidavit, while raising greater concern about the potential bias of the arbitrator, still do not render the decision not to seek recusal irrational or in bad faith.  While the alleged *ex parte* conversations involving the arbitrator, the employer's lawyer and witnesses were certainly objectionable, it remains the case that Local 2's lawyer could have rationally declined to object for tactical reasons.  An *ex parte* communication is not automatically grounds to vacate an arbitral decision.  It "requires vacatur of an award *only* if the ex parte contact constitutes misbehavior that prejudices the rights of a party."  *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1176 (9th Cir. 2010); *see also, e.g.*, *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 846 (7th Cir. 1995).[6]  Even assuming that the attorney's failure to object was a tactical error, that does not make it arbitrary or in bad faith.  *See Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir.1989) (tactical errors by union-provided attorney during arbitration were insufficient to demonstrate bad faith or arbitrariness); *Dennis*, 2009 WL 1473484, at *4.  Accepting the facts asserted in Stephens's affidavit as true, they would still not show that any error by the attorney was so egregious as to be deemed arbitrary or in bad faith.

Stephens's attorney raised an additional point for the first time at oral argument.  She argued that, prior to the arbitration, Lagana was going to testify that he had given Stephens

---

[6]     In his opposition papers, Stephens appears to be seeking to have this Court vacate the arbitrator's decision on the grounds of bias.  This relief cannot be sought in opposition to a motion for judgment on the pleadings.  In any event, the relief sought is time-barred since Stephens commenced this action more than 90 days after delivery of the arbitrator's decision.  *See* N.Y.C.P.L.R. § 7511(a); *see also Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*, 912 F.2d 608, 612 (2d Cir. 1990) (state statute of limitations applies to petition to vacate arbitral award pursuant to § 301 of the LMRA).

permission to take the dishwasher.  Then, after meeting privately with the employer's lawyer and

the arbitrator, Lagana changed his story and testified that he had not given Stephens permission.

This sudden reversal of testimony, precipitated by the *ex parte* meeting, should have caused any

rational lawyer to, at a minimum, inquire into the content of the *ex parte* discussions.  Failing to

take even this minimal step may well have been arbitrary, but it is unclear whether the Local 2

lawyer was aware that Lagana had reversed his testimony.  If he was unaware of this fact and

Stephens failed to raise it with him, then his conduct was not arbitrary.  Accordingly, I will

dismiss the SAC.  However, since a court must "freely grant leave when justice so requires,"

Fed. R. Civ. P. 15(a), I grant Stephens leave to amend.[7]

CONCLUSION

For the reasons stated above, the Defendants' motions for judgment on the

pleadings are granted.  Stephens is granted leave to file a third amended complaint within 14

days of the entry of this memorandum and order.

So ordered.

John Gleeson, U.S.D.J.

Dated: May 29, 2012
        Brooklyn, New York

---

[7]        If Stephens does file an amended complaint, I will then address the alternative argument that his § 301 claim must be dismissed because he has not sufficiently alleged a breach of the CBA.

9